IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 13, 2005

## JOHN W. BREWER, III v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2002-B-1184      J. Randall Wyatt, Jr., Judge**

_____

**No. M2005-00302-CCA-R3-PC - Filed March 15, 2006**

_____

The petitioner, John W. Brewer, III, appeals from the Davidson County Criminal Court's dismissal of his petition for post-conviction relief from his guilty plea to second degree murder, a Class A felony, for which he received a nineteen-year sentence. He contends that he received the ineffective assistance of counsel, rendering his guilty plea involuntary. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

James O. Martin, III, Nashville, Tennessee, for the appellant, John W. Brewer, III.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the petitioner's conviction for killing Larry Gamble during a robbery. A Davidson County grand jury indicted the petitioner for one count of premeditated first degree murder, one count of felony murder, two counts of especially aggravated robbery, a Class A felony, two counts of attempted first degree murder, a Class A felony, one count of attempted especially aggravated robbery, a Class B felony, and one count of aggravated burglary, a Class C felony. Pursuant to a plea agreement, the petitioner entered a guilty plea on July 25, 2003, to the lesser offense of second degree murder, a Class A felony, and all the other counts were dismissed.

The state presented the following account of the facts of this case at the guilty plea hearing.

> [T]he state's witnesses would be available to testify that on March the 13th of 2002, [the petitioner], along with his co-defendant, Mr.

Giddens, went to Pappas Court with the intent of committing a robbery. This robbery was set up by an unnamed individual, believed to be a female and a friend of Mr. Giddens. Both [the petitioner] and Mr. Giddens believed that drugs were being sold out of the house and a quantity of money would be present there.

In the early morning hours, Mr. Giddens and [the petitioner], who concealed their faces with masks, came up to the Pappas address. [The petitioner] was armed with a twenty-two (.22) caliber revolver. And Mr. Giddens was armed with an automatic handgun. They knocked on the side door. And the door was opened by one of the victims, Kelvin Johnson. Mr. Johnson was, then, forced back into the residence at gunpoint and into the living room, where Charles Thomas and Larry Gamble were sleeping. All three individuals were awoken and forced on the ground and money and drugs were demanded of them.

[The petitioner] was watching the scene while Mr. Giddens began searching the victims who were lying on the ground. At that point, Larry Gamble arose and tackled Mr. Giddens in an attempt to thwart the robbery. At that point, [the petitioner] discharged his weapon until it was empty, striking all three victims. Mr. Gamble died as a result of his injuries. Mr. Thomas and Mr. Johnson were treated at local hospitals.

[The petitioner] fled the scene. Mr. Giddens was also shot by one of the victims, allegedly, and remained at the scene. [The petitioner] and Mr. Giddens had gone to the scene in Mr. Giddens' vehicle. They had concealed the license plate with mud, in an attempt to conceal their identity. [The petitioner], when he entered the Pappas residence, picked up a cell phone that was there in an effort to prevent the victims from contacting the police. After he left the residence, after the shooting, he used that cell phone to call his girlfriend, [Londria] Cole, and asked her to come and pick him up. Ms. Cole did, in fact, do that and later gave a statement to the police that she provided [the petitioner] a ride from that location to another location and [the petitioner] indicated what had happened.

The state was able to secure the Cricket phone records from that phone. And those phone records did, in fact, corroborate her testimony.

On March 17, 2004, the petitioner filed a pro se petition for post-conviction relief alleging that the trial court accepted his guilty plea without first ascertaining a factual basis, that his guilty plea was not knowingly, intelligently, and voluntarily entered, and that he received the ineffective assistance of counsel. The trial court appointed counsel, and an amended petition for post-conviction relief was filed alleging that the petitioner received the ineffective assistance of counsel because 1) his counsel failed to interview a potential witness, Shelia Green, 2) his counsel failed to inform the petitioner that allegations made by Londria Cole could be impeached with evidence of bias, 3) his counsel failed to inform the petitioner that he could be appointed new counsel when his counsel was appointed to a judgeship before the petitioner's cases concluded, and 4) his counsel's actions led the petitioner to believe there was not a good defense and gave him "little choice but to waive his right to a trial and plead guilty."

At the hearing for post-conviction relief, trial counsel testified that he was a criminal court judge and had practiced criminal defense before becoming a judge. He said he was appointed to represent the petitioner post-indictment and received funding to hire an investigator, Bobby Brown. He said he talked to the petitioner at least thirty-four times before settling the case. He said he received information in discovery that Shelia Green was a potential witness and that she would have testified "the person she saw the evening of the incident was someone totally different from [the petitioner]." He said he never interviewed Ms. Green but believed Mr. Brown did. He said Mr. Brown did not prepare any written reports of his interview with Ms. Green, but he remembered talking to Mr. Brown about it. He said he did subpoena Ms. Green for the trial. He said he talked to the petitioner about Ms. Green's testimony but could not remember exactly what they had talked about.

Counsel testified that the testimony of Londria Cole would have been "extremely damaging" to the petitioner. He said he listened to Ms. Cole's taped statement to police and read the police officer's written report of Ms. Cole's interview, which placed the petitioner at the scene. He said Ms. Cole told the police that the petitioner used one of the victims' cell phones to call her and that she used the same phone to call her cousin. He said the state provided him with the phone records showing the calls were made. He said Ms. Cole's testimony was the only evidence placing the petitioner at the scene. He said Ms. Cole and the petitioner previously had a relationship, which ended after Ms. Cole became pregnant and had an abortion. He said he talked to the petitioner about how Ms. Cole's negative feelings toward him could be used to impeach her testimony. He said Ms. Cole contacted the police about this case after the petitioner and Ms. Cole had an argument and the petitioner threatened "to get" Ms. Cole or "beat her up." He said he did not believe showing Ms. Cole's bias to the jury would have been enough to win the case.

Counsel testified that the petitioner had told him at one point during his representation, "If you can get me anything less than twenty years, I think I'll take that." He said the plea was entered the Friday before the case was set to go to trial on Monday. He said the petitioner had no reluctance in entering the plea. He said the petitioner, in exchange for the plea agreement, spoke to the assistant district attorneys and gave a statement which provided information about his co-defendant, Mr. Giddens. He said he told the petitioner about his potential appointment to a judgeship but did not

-3-

apply for the judgeship until thirteen months after he began representing the petitioner. He said the only thing he may have said to the petitioner was that if he was appointed to a judgeship he could not represent the petitioner anymore. He said that the plea was entered in July 2003 and that he was not appointed criminal court judge until August 27, 2003.

On cross-examination, counsel acknowledged accompanying the petitioner to talk with the assistant district attorneys on the day of the plea and acknowledged the petitioner implicated both himself and the co-defendant in this crime. He acknowledged that the petitioner had agreed to testify for the state if needed but that the petitioner was not called as a witness in the case against the co-defendant. He acknowledged he was aware Ms. Cole would have testified she picked the petitioner up close to the scene of the murder, and he acknowledged telling the petitioner about this information. He said the chance of obtaining a sentence of less than nineteen years at the trial was "zero."

On re-direct examination, counsel testified that he did not interview Ms. Cole and that Mr. Brown attempted to talk to Ms. Cole but was unsuccessful. He said that the petitioner and Mr. Brown did not get along and that the petitioner did not think Mr. Brown was doing what needed to be done.

The petitioner testified that he believed Ms. Green's testimony would contradict everything Ms. Cole would say about the clothing he was wearing. He said Ms. Cole would have testified he was wearing brown khaki pants and brown boots. He said Ms. Green would have said the guy she saw had white high water pants, white tennis shoes, and was a light-skinned black man. He said he told his counsel he thought Ms. Green was an important witness and told Mr. Brown to talk to her. He said Mr. Brown brought him a picture of Ms. Green and told him "her real name was [Ms. Green] and this is the woman." He said that neither his counsel nor Mr. Brown ever told him that they had interviewed Ms. Green.

The petitioner testified that Ms. Cole was the main witness against him and that if his attorney had interviewed her he would have seen she was biased and had a motive to lie. He said his attorney did not talk to him about how they could use Ms. Cole's testimony to their advantage. He said that when he asked his attorney what their defense was, the attorney said, "[W]e don't have a defense." He said he wanted to go to trial and had counsel interviewed Ms. Cole or investigated his case, they would have been ready to go to trial. He said that on the day he entered the plea, his attorney told him the state had offered him a nineteen-year sentence. He said he responded, "We going to trial." He said his attorney told him the trial would be Monday. He said that he asked his attorney if he had interviewed Ms. Cole or Ms. Green and his counsel told him he had not. He said he told his attorney to continue the case but his attorney told him he could not because "they're not gonna give me a continuance cause I've been nominated to become a judge. And, they want my case load cleared." He said he did not want to plead guilty and asked again to get it continued. He said he wanted a continuance to give his attorney time to interview the witnesses and build a defense. He said he would have agreed to new counsel representing him if he could have gone to trial. He

said he felt he had no choice but to plead guilty because his attorney told him, "Man, I don't want to lose you for the rest of your life. You know, you gonna get life plus fifty."

On cross-examination, the petitioner acknowledged Ms. Green did not witness the crime. He acknowledged there were other eye witnesses, the two victims who survived the robbery. He acknowledged the two victims would testify two people were involved in the murder and shootings. He acknowledged he knew Ms. Cole would testify that he called her on one of the victims' cell phones, that she picked him up from the scene, and that he told her he had been involved. He said they were all lies. He acknowledged the phone records established whoever picked up the victim's cell phone called his girlfriend. He said Ms. Cole's brother made the call. He said he could not remember the conversation he had with the assistant district attorneys when asked if he ever told them that he did not commit the crime or that Ms. Cole was lying. He acknowledged telling the trial court the facts presented by the state were true and correct.

Shelia Green testified that she was "somewhat" of a witness to the homicide. She said that on the day of the homicide, she and her former boyfriend, who was deceased at the time she testified, had been sitting in a truck in front of her house. She said she heard a loud noise like a door being kicked in and heard three or four gunshots. She said a man ran from the house and up the street past their truck. She said her boyfriend said, "Hey." She said the man stopped and looked around. She said the man had on a black, dark hooded shirt, but she could not see who the person was. She said the man was black with light skin and was tall and slim. She said she had never seen the petitioner before. She said she had been subpoenaed to testify at the trial and had talked to the police but had not been contacted by anyone else investigating the case except a female claiming to be the petitioner's girlfriend.

On cross-examination, Ms. Green acknowledged that she saw someone running and could give a general description of the man, but that she would not have been able to identify the person. She admitted she did not know the petitioner or his co-defendant.

In denying the petition for post-conviction relief, the trial court found that counsel adequately investigated Ms. Green as a potential witness and was aware of her expected testimony. The trial court found that counsel knew Ms. Cole had "feelings of ill will towards the Petitioner" and that he explained to the petitioner that they could be used to impeach her testimony. The trial court found that the petitioner entered a knowing and voluntary plea and that the appointment of counsel to a judgeship had no effect on the representation provided to the petitioner. The trial court found counsel competently advised the petitioner about the evidence against him and could not be expected to "conjure up a defense where one is not available."

On appeal, the petitioner contends that the trial court erred in denying his petition for post-conviction relief. He claims he received the ineffective assistance of counsel, which rendered his guilty plea involuntary and unknowing. The state contends that the petitioner did not receive the ineffective assistance of counsel and that he was informed of all his rights.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

The petitioner contends that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution and article I, section 9 of the Tennessee Constitution. He asserts the trial court's order denying post-conviction relief contained significant factual errors. He contends his counsel failed to investigate Ms. Green adequately. He also contends counsel failed to inform him the allegations made by Ms. Cole could be impeached with evidence of bias. He contends counsel did not tell him that in the event counsel was appointed to a judgeship, the petitioner could be appointed new counsel. He contends that the acts and omissions of counsel led him to believe a good defense did not exist and that his only choice was to plead guilty. He asserts that if an adequate investigation had been performed, he would not have entered the guilty plea and would have proceeded to trial.

The state contends the petitioner failed to show that his counsel's performance was deficient or that he was prejudiced. The state asserts counsel was aware of what Ms. Green's and Ms. Cole's testimony would be. The state asserts the petitioner failed to show counsel would have gained any more information than he already had from the witnesses. The state says counsel explained to the petitioner that Ms. Cole's testimony could be impeached. It asserts the petitioner provided no proof he was coerced by his counsel. The state contends the record supports counsel's belief that the petitioner had no valid defense. The state contends the trial court carefully informed the petitioner of all his rights and reviewed the terms of the plea agreement. The state asserts the plea agreement was favorable to the petitioner.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that 1) counsel's performance was deficient and 2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims that the ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. The court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

## I. FAILURE TO INTERVIEW POTENTIAL WITNESS

The petitioner asserts that neither counsel nor the investigator contacted Ms. Green about her testimony. The petitioner also claims counsel never discussed with him Ms. Green's potential testimony that she had seen someone other than the petitioner leaving the scene of the crime. The petitioner asserts the trial court denied the petition based on an interpretation of the facts wholly inconsistent with the testimony. The state asserts counsel spoke to his investigator about Ms. Green and was aware of her potential testimony. The state argues that counsel's performance was not deficient because he did subpoena Ms. Green to testify at the trial.

When a petitioner contends that his trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). This is the only way for a petitioner to prove by clear and convincing evidence that "the failure to discover or interview a witness inured to his prejudice" or that the failure to "call the witness to the stand resulted in the denial of critical evidence." Id. at 757.

In its order denying the petition for post-conviction relief, the trial court stated:

> [Counsel] testified that Shelia Green was identified as a potential defense witness, and Mr. Brown was able to locate and interview her. [Counsel] testified that based on Mr. Brown's report, he understood [Ms.] Green's testimony to be that on the evening of the shooting, she heard gunshots, saw an individual running in the area, and her description of the individual did not match the Petitioner.
>
> . . . .
>
> The Court finds that [counsel] obtained the services of a private investigator, Bobby Brown, who interviewed Shelia Green as a potential defense witness. The Court finds that [counsel] reviewed the private investigator's report of the interview with [Ms.] Green, and that he understood her testimony to be that she heard gunshots,

saw an individual running in the area, and her description of the individual did not match the Petitioner. The Court finds that the entirety of [Ms.] Green's testimony at the post-conviction hearing was the same as [counsel] testified that he had understood it to be. The Court is of the opinion that [counsel] adequately investigated [Ms.] Green as a potential witness for the defense, and was fully appraised of the substance of [Ms.] Green's potential testimony. The Court is of the opinion that this ground is without merit.

Initially, we note the trial court's order contained factual errors. The trial court found 1) that Mr. Brown interviewed Ms. Green, 2) that counsel reviewed Mr. Brown's report of Ms. Green's interview, and 3) that counsel understood what Ms. Green's testimony would be. The record does not support the trial court's finding that counsel reviewed Mr. Brown's report. Counsel testified he did not have any reports from Mr. Brown about an interview with Ms. Green. Also, there is conflicting testimony about whether or not Mr. Brown interviewed Ms. Green. Ms. Green testified she was never contacted by anyone investigating the case, but counsel testified Mr. Brown did interview Ms. Green. Mr. Brown was not called as a witness. However, the record does support the trial court's finding that counsel understood what Ms. Green's testimony would be.

The record reflects that counsel learned about Ms. Green as a potential witness through a police report he received in discovery and believed her testimony would have been consistent with her statement in the police report he had received in discovery. Counsel testified that he remembered talking to Mr. Brown about an interview with Ms. Green but said he did not have a report from the interview. He said he expected Ms. Green to testify that "the person she saw the evening of the incident was someone totally different from [the petitioner]" and that "she did, in fact, see someone different, but, that's about the extent of what she saw, someone running in the area that was different." When counsel was asked if he discussed Ms. Green's testimony with the petitioner, he responded, "I can't specifically say what I talked with [the petitioner] about with respect to Ms. Green. I know we talked about it, I just can't tell you . . . with great particularity as to what we talked about." Based on Ms. Green's expected testimony, he subpoenaed her to the trial.

The petitioner acknowledged receiving information about Ms. Green in discovery and talking to his counsel about Ms. Green, but he said neither counsel nor Mr. Brown discussed interviewing her. He testified that he knew from discovery that Ms. Green was a potential witness and that he believed Ms. Green's testimony could have helped him. We conclude the petitioner has failed to prove by clear and convincing evidence that he was prejudiced by his attorney's failure to investigate, and the petitioner is not entitled to relief on this issue.

## II. FAILURE TO INFORM PETITIONER THAT WITNESS COULD BE IMPEACHED

The petitioner contends counsel was ineffective for failing to inform him that Ms. Cole could be impeached for bias. The petitioner asserts that counsel did not interview Ms. Cole. The state asserts counsel was aware of what Ms. Cole would have testified and was aware of the petitioner and

Ms. Cole's relationship. The state asserts counsel discussed with the petitioner that Ms. Cole's bias could be used to discredit her testimony. The state asserts the investigator attempted to talk to Ms. Cole without success.

Counsel testified that he talked to the petitioner about impeaching Ms. Cole and was aware of the circumstances surrounding the petitioner's and Ms. Cole's relationship. He said Mr. Brown attempted to contact Ms. Cole but was unsuccessful. He said he discussed with the petitioner how Ms. Cole's negative feelings toward the petitioner could be used to impeach her testimony at the trial. The petitioner said they never discussed Ms. Cole's bias, but he admitted that he knew what Ms. Cole would say through discovery and that counsel told him that he would "make [Ms. Cole] look like a liar." The trial court found that counsel "fully explained to the Petitioner that [Ms.] Cole's testimony could be impeached by evidence of bias, and fully explained the relative weight of such a cross examination in light of the corroborative evidence." We conclude the petitioner has failed to carry his burden of proving by clear and convincing evidence that his counsel's performance was constitutionally deficient, and the petitioner is not entitled to relief on this issue.

## III. FAILURE TO INFORM PETITIONER HE COULD BE APPOINTED NEW COUNSEL

The petitioner asserts counsel was ineffective for failing to tell him that if counsel was appointed to a judgeship, the petitioner could be appointed new counsel. He contends counsel's deficient performance gave him no choice but to plead guilty. The state asserts that the petitioner provided no proof that he was coerced by counsel and that the trial court carefully informed the petitioner of all his rights when he entered the guilty plea.

In the trial court's order denying post-conviction relief, it found that counsel "competently counseled the petitioner so that he was able to enter into the plea agreement knowingly and voluntarily." It also found the appointment of counsel to a judgeship, after counsel's representation of the petitioner had ended, had no effect on the representation.

The record reflects the petitioner acknowledged his sentence would be nineteen years at one hundred percent. The record also reflects petitioner acknowledged he was entering the plea voluntarily. Although the petitioner testified he repeatedly asked counsel to get a continuance because he wanted to go trial, the petitioner never requested a continuance from the trial court. Instead, the petitioner told the trial court he was pleading guilty through his own voluntary decision. At the post-conviction hearing, counsel testified that the petitioner had no reluctance entering the guilty plea and had told him previously that if he could get a deal of less than twenty years, the petitioner would take it. He said that in exchange for the plea deal, the petitioner spoke to the assistant district attorneys and gave a statement which provided information about the co-defendant's involvement in this case. We conclude that the petitioner's guilty plea was knowing, voluntary, and intelligent. Therefore, the petitioner has failed to prove by clear and convincing evidence that he was prejudiced, and he is not entitled to relief on this issue.

## IV.  ACTS AND OMISSIONS OF COUNSEL

The petitioner contends that the counsel's acts and omissions led him to believe that there was not a good defense and he had no other choice but to plead guilty. He asserts that counsel failed to inform him that Ms. Cole could be impeached with evidence of bias, that counsel failed to interview Ms. Green, and that counsel failed to inform him that he could be appointed new counsel. He asserts counsel's deficient performance left him with no defense. The state contends the record supports counsel's belief that the petitioner had no valid defense. The state asserts counsel was aware of what Ms. Green's expected testimony would be and subpoenaed her to the trial. The state asserts that counsel was also aware of Ms. Cole's expected testimony and that his investigator had attempted to contact Ms. Cole without success. The state contends the petitioner failed to offer any proof at the post-conviction hearing about what counsel could have done that would have provided him with a defense.

In the trial court's order denying post-conviction relief, it found that counsel

> evaluated the strengths and weaknesses of the State's case against the Petitioner, using his many years of experience handling similar cases of a serious nature. The Court is of the opinion that [counsel] advised the Petitioner about the evidence against him, and his criminal exposure as a result of being charged with several serious felonies, including First Degree Murder. The Court is of the opinion that an attorney is charged with fully and candidly appraising the client of the strengths and weaknesses of the case, and not giving the client false hope by dressing up a weak defense or creating a frivolous defense. In short, a defense attorney cannot be expected to conjure up a defense where one is not available. The Court is of the opinion that [counsel] competently counseled the Petitioner so that he was able to enter into the plea agreement knowingly and voluntarily.

We conclude the evidence in the record does not preponderate against the trial court's findings on this issue. The petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE